IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JUSTIN DAVID EICHORN | Case No. 25-mj-142 SGE |

### AFFIDAVIT OF MATTHEW VOGEL

1. I am a Special Agent of the United States Department of Justice, Federal Bureau of Investigation (FBI), and have been so employed since July 2010. I am currently assigned to the Minneapolis Division and the Minnesota Child Exploitation Task Force, where my investigative responsibilities include investigation of child sexual abuse and exploitation crimes such as the online enticement and coercion of minors, production, possession, receipt, and distribution of child pornography. I have gained knowledge and experience through training at the FBI Academy, in service training, and everyday work in conducting these types of investigations. I have received training in the area of child pornography and child exploitation investigations and have reviewed numerous examples of child pornography as defined at 18 U.S.C. § 2256, in various forms of media, including computer media. I have also received training in online undercover operations in child exploitation investigations.

2. I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7), and I am empowered by 18 U.S.C §§ 3052 and 3107 to conduct investigations of, and to make arrests for, violations of federal criminal statutes.

3. I make this affidavit for the limited purpose of establishing probable cause in support of issuing a complaint and arrest warrant for Justin David Eichorn for knowingly using the mail or any facility or means of interstate or foreign commerce to persuade, induce, entice, or coerce any individual who has not attained the age of 18 years to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, and/or that Eichorn attempted to do so, all in violation of 18 U.S.C. § 2422(b).

4. The facts set forth in this affidavit come from my personal observations, my training and experience, and evidence gathered by, and information I have learned from, officers of the Bloomington (Minnesota) Police Department. Because this affidavit is submitted for the limited purpose of establishing probable cause, it does not include each and every fact known to me or to other investigators.

## PROBABLE CAUSE

5. On or about March 12, 2025, and March 13, 2025, Bloomington Police detectives carried out a multi-jurisdictional "sex trafficking juvenile demand suppression operation." According to Bloomington Police, the purpose of this operation was to identify individuals who offer to hire girls under the age of eighteen for commercial sex.

6. On and before these dates, employees of one or more Minnesota law enforcement agencies placed advertisements for commercial sex on at least two identified websites, known to myself and other law enforcement officers to facilitate

human trafficking, amongst other things. These websites are publicly available on the Internet.

7. In my training and experience, I am aware that both of the identified websites are commonly used in both adult and juvenile human trafficking schemes. These sites allow users to post descriptive narratives and upload photos and videos. The advertisements posted by covert law enforcement included three to four photos of a female. One of those photos depicted a female in a white shirt and black underwear. The lower half of her face was visible. In another photo, a female wore a black shirt and shorts.

8. There were variations of the undercover law enforcement advertisement posted during the operation, however they all were variations of the same information: "cum $pend time with me […] Age: 18 I am: A woman I see: Men only. Hi I'm [fictitious name] ready to plz I do both and incall[1] only [covert law enforcement telephone number] City: Minneapolis, MN Name: [name] Location: Bloomington." Some of the advertisements had height, weight, and breast size information. After posting the advertisement on the two websites, Bloomington police noted that other "scraper" websites picked up the advertisements and further publicized those advertisements. In my training and experience, I am aware that "scraper" sites trawl

---

[1] In my training and experience, and in the context of this investigation, the term "incall" is meant to convey that clients are expected to come to the location of the female to engage in commercial sex.

these types of sites (that is, sites involved in human trafficking) for content and repost that content in order to draw traffic, thereby generating advertising revenue.

9. Law enforcement agencies participating in the Bloomington undercover operation assigned undercover law enforcement officers to work as "chatters." "Chatters" are undercover law enforcement officers assigned to receive incoming messages from persons contacting the phone number posted in the advertisement. These chats largely occurred via text message using a Voice over Internet Protocol[2] (VoIP) service.

10. On or about March 11, 2025, the undercover law enforcement phone number received text messages from XXX-XXX-9711[3] (hereinafter, the Suspect). These texts included, "Hey [fictitious name] I saw your post and [sic] chance you are still available tonight?" and later, "What's a guy gota do to get with the hottest girl online tonight."

11. On or about March 12, 2025, the Suspect again contacted the undercover phone number asking if [name] was "available today." An undercover law enforcement officer (the "UC") responded, "hey baby i am." The Suspect replied, "Awesome where ya at and what's your rates."

---

[2] In general, VoIP facilitates voice and text message communications via the Internet instead of using standard telephone networks.
[3] This number is assigned to a VoIP service provider. In my training and experience, I am aware this means the Suspect was using an Internet-based application to send and receive the communications documented below.

12. Also on March 12, the suspect asked, "Qv[4] or hhr how old are you." The UC responded: "kinda nervous 2 say," and then (purportedly) revealed, a few texts later, "im 17 sry don't want u 2 b mad."

13. The communications continued on March 12 and March 13, 2025. However, no plans were yet set because officers were handling other suspects at the time. Messages sent during this time included discussion of the undercover's "rates," her supposed age, and sex acts.

14. On or about March 13, 2025, after again inquiring about the undercover officer's age, the Suspect wrote, "Ok will ya send me a naught pic of you to show me your real?" The undercover officer responded, "whats naughty 2 u?" The Suspect replied, "You decide." The undercover officer sent a photo depicting a clothed female's cleavage. The Suspect continued, "Got anything with lot less clothes?"

15. On March 17, 2025, the Suspect again contacted the undercover law enforcement phone number. The Suspect asked, "Hey what's up are you available today?" The following interaction, in part, occurred:[5]

UC: Hey babe

---

[4] In my training and experience, and based on the context of this investigation, "Qv" likely refers to "quick visit" or an appointment lasting approximately 15 minutes or less.
[5] The transcript of messages herein is based on a draft transcript provided by Bloomington police. It is subject to revision, however based on currently available information, I believe it is substantively accurate.

Suspect: Hey I would still like to find a way to meet ya and both feel comfortable where ya located today and would ya be open to doing an outcall[6]

UC: I am available baby. I have a private discreet place in Bloomington. I only do outcall after the first date.

UC: Yes we could do that.....I'm sorry babe my phone has been super busy and we hadnt talked for awhile....how long are you looking to spend?

Suspect: Qv or half hour

UC: $80qv or $120hh[7]

Suspect: Ok and what's exactly do ya offer at that rate ?

UC: FS.[8] No greek[9] and bare[10] is extra.

Suspect: Ok how much extra?

UC: $25

Suspect: Ok what's your address I'll see if I can get there.

---

[6] Based on my training and experience, I believe the term "outcall" in this context refers to a service where the service provider travels to the client's location to provide services. In the context of commercial sex, an outcall would have the female traveling to the paying party for sex.

[7] In my training and experience and based on the context of this investigation, it would likely be understood that the UC was charging $80 for 15 minutes or less and $120 for a half hour visit.

[8] "Full service" or sexual intercourse.

[9] In this context, the term "greek" is a reference to anal sex.

[10] In my training and experience, and based on the context of this investigation, "bare" is short for "bareback," also known as sexual intercourse without prophylactic protection such as a condom.

During this interaction, the Suspect identified himself as a 38-year-old[11] white male. The UC reintroduced the topic of the UC's purported age:

> UC: A lil younger than my ad….is that ok? I just wanna have fun and no drama babe
>
> Suspect: Sure I don't know what your ad says cuz I don't have it up anymore but as long as your legal age I am fine
>
> UC: I am 17…like I said don't want any drama but wanna be upfront cause one guy got hella mad at me
>
> Suspect: Why was he so mad? I think age of consent is 17 when do ya turn 18 ?
>
> UC: Idk[12] lol he was a creep anyway. I don't turn 18 till December
>
> Suspect: It's says age of consent is 16 …… over 18 is in a position of authority over you like a teacher or friends parent

16. Around this point in the communications, law enforcement provided the Suspect with the address where the law enforcement operation was set to occur. The Suspect asked for a verification photo, writing, "Ok how about a pic in just your bra and underwear holding up 2 fingers." In my training and experience, this kind of request is common amongst persons soliciting commercial sex in order to provide

---

[11] Eichorn is in fact 40 years old. In my training and experience, I am aware that persons engaged in commercial sex transactions do not always disclose their true age, but sometimes rather provide a different age—usually making themselves younger than their true age.
[12] Shorthand for: "I don't know"

themselves with a sense of surety that the person they are planning to meet with is a real person of approximately the age and appearance of the person from whom they intend to purchase sex.

17. The undercover officer provided the Suspect with a map of the area and indicated on the map where the Suspect should park.

18. Thereafter, the Suspect wrote, "Just pulling in come out what are ya wearing I'll look for you." There was an interaction wherein the Suspect stated he had arrived at the designated spot. Law enforcement then observed a white Toyota Tundra backed into a parking spot in the area designated in the image sent earlier by the undercover. Law enforcement observed a white male wearing a black shirt get out of the truck and walk around the lot on his phone. In a text message, the UC asked, "is that you walking in the black shirt?" The Suspect replied, "ya."

19. At approximately that point, marked law enforcement officers approached the Suspect. Reports indicate the Suspect was seen manipulating his phone and discarding it in his vehicle as marked squads approached. Police identified the truck as bearing Minnesota license KGW529[13] and arrested the male from the truck, later identified as Justin David Eichorn.

20. Eichorn was arrested on suspected state violation(s) arising in part from the conduct described above.

---

[13] According to the Minnesota Department of Public Safety, Driver and Vehicle Services, this vehicle is registered to Eichorn.

21. Bloomington police towed Eichorn's vehicle. During an inventory search of the vehicle, police located—amongst other things—two Apple iPhones, an unopened Trojan brand condom in the driver side door, $105 cash in the driver side door handle, and $24 cash in the center console.

22. As of the morning of March 19, 2025, Eichorn was in custody at the Hennepin County Jail. It is illegal under Minnesota state law to hire or offer or agree to hire an individual who the actor reasonably believes to be under the age of 18 years but at least 16 years to engage in sexual penetration or sexual contact.

## CONCLUSION

23. Based on the foregoing, I submit there is probable cause to believe that, in or about March 2025, in the State and District of Minnesota, JUSTIN DAVID EICHORN knowingly used the mail or any facility or means of interstate or foreign commerce to persuade, induce, entice, or coerce any individual who has not attained the age of 18 years to engage in prostitution or any sexual activity for which any

person can be charged with a criminal offense, and/or that EICHORN attempted to do so, all in violation of 18 U.S.C. § 2422(b).

_____
Special Agent Matthew Vogel
United States Department of Justice
Federal Bureau of Investigation

SUBSCRIBED and SWORN before me
by reliable electronic means (Zoom and
email) pursuant to Fed. R. Crim. P. 41(d)(3)
on March 19, 2025

_____
THE HONORABLE SHANNON G. ELKINS
UNITED STATES MAGISTRATE JUDGE